<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DOMINGO GONZALEZ**<br><br>　　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　　　　　**Defendant.** | **Civil Action No. 12-5696 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before this Court is an appeal filed by Plaintiff Domingo Gonzalez seeking review of the decision of an Administrative Law Judge ("ALJ") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

**I.     Background**

Plaintiff Domingo Gonzalez is a 19-year-old male who alleges disability due to mental retardation. (D.E. No. 16, Administrative Record ("Tr.") at 493). He resides in Paterson, New Jersey with his mother and two sisters. (*Id*. at 496, 501-502). At the time of his administrative hearing, Plaintiff had been placed at and was attending the New Road School in Somerset, New Jersey. (*Id*. at 141, 493). Since his childhood and upon adulthood, Plaintiff has undergone various psychological tests to evaluate his mental capacity. (*Id*. at 82-427).

Plaintiff was originally awarded childhood disability benefits on September 1, 1999. (*Id*. at 53). On March 27, 2010 the Social Security Administration ("SSA") sent a notice to Plaintiff

informing him that he no longer qualified for SSI. (Tr. at 71). On January 10, 2011, a hearing officer upheld that decision and stated that Plaintiff's disability had ceased as of March 2010. (*Id*. at 50, 54). Plaintiff requested reconsideration on January 24, 2011, and thus a hearing was held before ALJ Michal L. Lissek on August 18, 2011. (*Id*. at 15). ALJ Lissek's opinion was unfavorable to the plaintiff, (*Id*. at 25), and plaintiff filed a moving brief on April 8, 2013, (D.E. No. 9, Plaintiff's Moving Brief ("Pl. Mov. Br.")). Defendant filed a brief in opposition on May 30, 2013. (D.E. No. 13, Defendant's Brief in Opposition ("Def. Opp. Br.")). Plaintiff filed a reply brief on June 10, 2013. (D.E. No. 14, Plaintiff's Response Brief). The matter is now ripe for resolution.

## II.     Legal Standards

### A. Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). Substantial evidence is more than a "mere scintilla" of evidence and indicates "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence "need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d. Cir. 2004). Failure to meet the substantial evidence standard normally warrants remand, but such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

Where the ALJ's findings are supported by substantial evidence, the Court is bound by them "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d

358, 360 (3d Cir. 1999). The Court is limited in its review because it cannot "weight the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. Standard for Awarding Benefits

To be eligible for SSI under Title XVI of the Social Security Act, a claimant must establish that he or she falls under the definition of "disabled" set forth by the Act. *See* 42 U.S.C. § 1382 (Title XVI). Additionally, those seeking SSI must fall within the income and resource limits set forth in §§ 1382(a) and 1382(b).

An individual is deemed disabled under both title**s** if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 1382(c)(a)(3)(B).

The Social Security Administration has established a five-step, sequential evaluation to determine whether an individual is disabled under the Social Security Act:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled . . .
> (ii) At the second step, we consider the medical severity of your impairment(s). if you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled . . .
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1

> of [20 C.F.R. Part 404, Subpart P] and meets the duration requirement, we will find that you are disabled . . .
> (iv) At the fourth step, we consider our assessment of your residual functioning capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled…
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.
> If at any point in this sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the evaluation stops.

20 C.F.R. § 404.1520(a)(4).

### III. Discussion

Plaintiff argues that ALJ Lissek erred in her analysis at (1) step three, (2) the Residual Functional Capacity ("RFC") determination, and (3) step five. (Pl. Mov. Br. at 17). Regarding step three, Plaintiff argues that ALJ Lissek failed to properly consider his low I.Q. score in combination with his learning disability in concluding that he was not disabled at that step. (*Id.*). Regarding the RFC determination, Plaintiff claims that ALJ Lissek failed to consider the Learning Assessment from August 31, 2007 ("2007 Learning Assessment") and witness testimony in her finding of the Plaintiff's RFC. (*Id.* at 22). Finally, regarding step five, Plaintiff argues that ALJ Lissek improperly relied on the Medical-Vocational Guidelines ("Grids") to determine the work available to Plaintiff in the national market. (*Id.* at 27). The Court will address each argument in turn.

#### A. Step Three

Plaintiff argues that at step three of the analysis, ALJ Lissek incorrectly determined that his impairments did not equal the criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), section 12.05C. Plaintiff asserts that his impairment equals paragraph C of Listing

12.05 for Mental Retardation due to his low I.Q. of 71 as well as his learning disability, which constitutes his additional mental impairment. (*Id.* at 19).

In order to meet Listing 12.05C, the claimant must have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.05C. A claimant can equal the listed impairment if the claimant exhibits all of the findings needed to meet the listing but one or more of the findings is not as severe as specified in the particular listing. *See* 20 C.F.R. 416.926; *Sullivan v. Zebley*, 493 U.S. at 531-532 ("For a claimant to qualify for benefits by showing that his unlisted impairment, or a combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.").

ALJ Lissek determined that Plaintiff does not meet or equal the requirements in paragraph C because Plaintiff does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. (Tr. at 18). ALJ Lissek made her determination based on the fact that "the claimant's I.Q. scores were not of Listing level and the evidence fails to establish another physical or mental impairment that satisfies paragraph C of this listing." (*Id.*). ALJ Lissek noted that cognitive testing in both September 2007 and July 2010 revealed scores that equated to a full-scale I.Q. of 74 and that administration of the WAIS-IV yielded a full-scale I.Q. score of 74. Furthermore, the ALJ noted that no subset of this full-scale IQ score revealed an IQ score below 71. (*Id.*). As ALJ Lissek noted, both of these scores are above the required score between 60 and 70 set forth in Listing 12.05C. (*Id.*). Although Plaintiff argues that his learning disability may constitute an additional mental impairment, ALJ Lissek set forth that this learning disability is not

so severe that it both overcomes the I.Q. requirement and also constitutes a mental impairment under Listing 12.05C. (*Id.*). Based on the above analysis, the Court concludes that the ALJ's decision that Plaintiff does not meet the criteria of Listing 12.05C is supported by substantial evidence.

### B. Residual Functioning Capacity

Next, Plaintiff argues that ALJ Lissek incorrectly determined Plaintiff's RFC by failing to consider crucial medical evidence, in violation of Social Security Ruling ("SSR") 96-8p.[1] (Pl. Mov. Br. at 22). Specifically, Plaintiff argues that ALJ Lissek failed to consider the 2007 Learning Assessment and additional witness testimony in her finding of Plaintiff's RFC. (*Id.*).

The Third Circuit has held that ALJ must consider all relevant evidence when determining an individual's RFC. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2000). Although the ALJ is not expected to make reference to every relevant treatment note in a case, the ALJ must nevertheless show that he has considered and evaluated the medical evidence in the record consistent with his responsibilities under the regulations and case law. *See id*. When there is conflicting testimony, the ALJ's decision is not supported by substantial evidence "'unless [the ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits.'" *See Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 2000) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

Here, as Plaintiff contends, ALJ Lissek did not directly reference the 2007 Learning Assessment. (Pl. Mov. Br. at 22). However, as Defendant notes, the ALJ considered other evidence that discussed the same impairments as the 2007 Learning Assessment and supported the

---

[1] SSR 96-8p states that "RFC is assessed by adjudicators […] based on all of the relevant evidence in the case record."

6

same conclusions as that report—specifically, the November 19, 2009 IEP ("2009 IEP"). (Tr. at 20) (Def. Opp. Br. at 20). For example, the 2007 Learning Assessment sets forth that, in the ninth grade, Plaintiff scored at a grade level 2.7 (indicating that his results were equivalent to that of a child in the seventh month of second grade) on reading tests, 2.9 on writing tests, and 3.4 on math tests. (*Id.* at 181, 182). In a similar vein, the 2009 IEP sets forth that, in the 11th grade, Plaintiff's reading and language skills were at a fourth grade level and his math skills were at a fifth grade level. (*Id.* at 230-231). The results of the 2007 Learning Assessment and the 2009 IEP indicate that Plaintiff was in ninth and eleventh grade levels, but was performing intellectually at much lower grade levels. (*Id.*). Thus, both the 2007 Learning Assessment and the 2009 IEP suggest the same conclusion—that Plaintiff was performing at a level significantly lower than his grade in school would indicate. Because ALJ Lissek considered the 2009 IEP, which points to the same conclusion as the 2007 Learning Assessment, the Court finds that the ALJ did not err by failing to explicitly discuss the 2007 Learning Assessment in the administrative opinion.

Furthermore, the ALJ's discussion of relevant medical evidence as a whole indicates that that the ALJ's RFC determination was supported by substantial evidence. (*Id*. at 20). For example, ALJ Lissek considered the January 26, 2010 mental status consultative examination, the July 21, 2010 intellectual consultative examination, the November 9, 2010 New Roads report card, and the December 8, 2010 Eligibility Conference Report from Paterson Public Schools. (*Id.*). These records established Plaintiff's cooperative disposition during testing, his I.Q. results, and his positive temperament in the classroom. (*Id.*). Based on this analysis, the Court concludes that ALJ Lissek supported her analysis of the relevant evidence with substantial evidence.

Plaintiff also argues that ALJ Lissek erred in failing to address the testimony of Plaintiff's mother and Plaintiff himself which were provided to the ALJ at an administrative hearing. (Pl.

7

Mov. Br. at 23). However, ALJ Lissek specifically referenced this testimony in a separate section of the administrative opinion dedicated to the analysis of witness testimony. (Tr. at 21). In this section, ALJ Lissek referenced witness testimony that Plaintiff had the ability to use public transportation. (*Id.*). She also noted Plaintiff's mother's testimony in which she said that he constantly "forgets things and cannot remember all of his chores." (*Id.*). Thus, contrary to Plaintiff's contentions, it appears that the ALJ did in fact consider both Plaintiff's and his mother's testimony. Accordingly, the Court finds that this argument is without merit.

### C. Step Five

Finally, Plaintiff asserts that ALJ Lissek failed to comply with *Sykes v. Apfel*, 228 F.3d 259 (3d. Cir. 2000) and Social Security Acquiescence Ruling 01-1(3) ("AR 01-1(3)") in three ways. (Pl. Mov. Br. at 27). Plaintiff asserts that ALJ Lissek (1) improperly relied on the Grids to determine the work available to the Plaintiff in the national market, (2) failed to call a vocational expert as evidence, and (3) failed to give Plaintiff notice of her reliance on the Grids so that Plaintiff could respond before the claim was denied. (*Id*. at 27-28).

In *Sykes*, the Third Circuit held that when a claimant has nonexertional impairments, the Commissioner cannot rely on the Grids without either taking additional vocational evidence from the testimony of a vocational expert or providing the claimant with notice. *See Sykes*, 228 F.3d at 270-271. In response to *Sykes*, the SSA issued AR 01-1(3), which sets forth that before denying disability benefits despite the presence of nonexertional limitaitons, the Social Security Administration must either (1) take vocational evidence or (2) provide notice to the claimant that the nonexertional limitations do not limit the market for jobs available to the plaintiff. *See* AR 01-1(3). The notice must inform the claimant that the Commissioner intends to rely solely on the

8

Grids so that the claimant can present additional evidence or argument in response. *See Sykes*, 228 F.3d at 270-271; AR 01-1(3).

However, the requirements of AR 01-1(3) need not be met when there is an SSR that is clearly probative on the impact of Plaintiff's non-exertional limitations on the ability to work. *See* SSR 85-15 ("This Ruling does not apply to claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects a claimant's occupational job base"); *Allen v. Barnhart*, 417 F.3d 396 (3d Cir. 2005). Thus, when there is a clearly probative SSR, the ALJ can rely on the Ruling in lieu of a vocational expert. *See Allen*, 417 F.3d at 407. Where the Commissioner relies on an SSR instead of consulting a vocational expert, "it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work." *Id*.

The district court's opinion in *Burrows v. Commissioner of Social Security* is illustrative of this exception to *Sykes* and AR 01-1(3). No. 13-3744, 2014 WL 2919469, at *3 (D.N.J. June 27, 2014). In *Burrows*, the court found that the ALJ properly relied on SR 85-15 in lieu of obtaining vocational expert testimony. In the moving brief, the plaintiff argued that "the ALJ's finding that her impairments resulted in her limitation to work involving only short, simple instructions, routine tasks, and occasional interaction with others, drastically restricted the numbers and types of jobs any individual could perform." *Id.* at *4. The plaintiff contended that because of this, the ALJ was required to call a vocational expert to assess work activity based on these restrictions. *Id.*

In rejecting the plaintiff's argument, the court noted that the ALJ relied on SSR 85-15, which provided a framework for evaluating non-exertional impairments like the plaintiff's. The court further noted that the overall simplicity of the case allowed the ALJ to analyze the evidence

9

within SSR 85-15's framework without the aid of an expert. Indeed, the ALJ "cited extensively to the plaintiff's abilities to go to a Methadone clinic daily, to receive therapy 1 to 2 hours once a week, clean her house, garden, do laundry, prepare meals, to read 2 to 3 hours per day, arrange for transportation, and maintain relationships with her husband, daughter, and grandson." *Id.* at *5. The court found that this discussion of the evidence was sufficient to address the plaintiff's non-exertional limitations. *Id.* at *6.

Here, ALJ Lissek relied upon SSR 85-15 in coming to her conclusion that Plaintiff's non-exertional limitations would not significantly erode the national work base. (Tr. at 22). SSR 85-15 sets forth the mental demands required for unskilled work, including "the abilities (on a sustained basis) to remember simple instructions, to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.

Read as a whole, the ALJ's opinion indicates that the ALJ considered factors in the medical record which were relevant to SSR 85-15. For example, the ALJ noted that Plaintiff "goes to the store next to his house; that he takes out the garbage; and that he cleans his room." (Tr. at 21). Additionally, the ALJ noted that Plaintiff has a few friends and likes to play basketball. (*Id.*). The ALJ also considered the January 26, 2010 mental status consultative examination, which noted that Plaintiff "was very cooperative and took to the testing situation very well." (Tr. at 20). The ALJ's consideration of such evidence speaks to Plaintiff's ability to respond appropriately and to deal with changes, two important aspects of the relevant SSR.

In addition, the ALJ's RFC determination only limits Plaintiff to work that could be learned in one month or less and only involves simple instructions. (*Id*. at 19). As the ALJ properly concluded, SSR 85-15 addresses these non-exertional limitations and specifies that such

10

limitations would not erode the national work base available to the claimant. (*Id.* at 22; Def. Opp. Br. at 22). As such, the Court finds that the ALJ acted properly in relying on SSR 85-15 and the Grids in concluding that Plaintiff was not disabled at step five. As such, the Court further concludes that AR 01-1(3)'s notice and VE requirements do not apply, and thus, that ALJ Lissek did not err by failing to provide Plaintiff with notice or failing to rely on the testimony of a VE.

**IV.     Conclusion**

For the reasons discussed above, the Court concludes that ALJ Lissek's decision is supported by substantial evidence. Accordingly, the ALJ's decision is affirmed. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**